**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER E. and W.E., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 24-cv-13175 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS and BLUE SHIELD of ILLINOIS, and the DISCOVER FINANCIAL SERVICES WELFARE BENEFITS PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"We need the tonic of wildness." *Read generally* Henry David Thoreau, *Walden: Or, Life in the Woods* (1854). But the tonic of wildness comes at a price. For W.E. and his parents, that tonic came at a cost of over $50,000. And the tonic turned out to be one his health insurance didn't cover.

In early 2022, W.E. participated in an outdoor therapy program run by Second Nature. Second Nature provides an outdoor backpacking experience combined with therapy to help young adults struggling with mental health, behavioral, and substance abuse challenges.

W.E. was enrolled for more than two months, which racked up a hefty bill. W.E. was insured through his father, Christopher E. ("Chris"), who had an employee welfare benefits plan administered by Blue Cross and Blue Shield of Illinois. When Chris filed a claim for payment of W.E.'s treatment expenses at Second Nature, Blue Cross denied the claim. Chris appealed, but Blue Cross dug in its heels.

Chris and W.E. then sued Blue Cross and the Discover Financial Services Welfare Benefits Plan ("the Plan"), bringing two claims. First, Plaintiffs allege that Defendants violated ERISA by denying claims for benefits covered by the Plan. Second, they claim that Defendants put stricter limits on mental health/substance abuse coverage than on analogous medical/surgical coverage, in violation of another federal statute.

Blue Cross moved to dismiss. For the reasons stated below, the motion to dismiss is granted.

**Background**

In early 2022, W.E. went to Utah to participate in Second Nature's outdoor therapy program. *See* Am. Cplt., at ¶ 4 (Dckt. No. 33). W.E. went to get help with several issues, including depression, anxiety, substance use, ADHD, and social dysfunction. *Id.* at ¶ 9.

Plaintiffs don't reveal much about Second Nature. It "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems." *Id.* at ¶ 4. And it is located in Duchesne County, Utah. *Id.*

Beyond that, Plaintiffs have little to say. Second Nature's website suggests it provides "nature-based therapeutic treatment."[1] That nature-based therapy seems to include some mixture of backpacking, camping, hiking, group therapy, individual assignments, and whatever else fills the day.[2]

W.E. was at Second Nature for over two months. *Id.* at ¶ 4. In that time, his family racked up a bill. And it wasn't a small bill: it totaled over $50,000. *Id.* at ¶ 31. W.E.'s father, Chris, sought reimbursement from his health insurance.

Chris was insured through his participation in the Discover Financial Services Welfare Benefits Plan, an employee welfare benefits plan. *Id.* at ¶ 3. In other words, he had coverage through employer-provided health insurance. The Plan was administered by Blue Cross and Blue Shield of Illinois. *Id.* at ¶ 2.

Chris submitted a claim, but Blue Cross denied it. *Id.* at ¶ 5. In the explanation of benefits statements, Blue Cross explained that "Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines." *Id.* at ¶ 10.

Chris appealed. *Id.* at ¶ 11. He made several arguments and requests of Blue Cross. *Id.* at ¶¶ 11–27. He argued that the treatment provided by Second Nature was a covered benefit under the terms of the Plan. He also asserted that the denial of payment violated the Mental Health Parity and Addiction Equity Act. *Id.* at ¶¶ 14, 21.

---

[1] *See* Second Nature, https://second-nature.com/ (last accessed September 29, 2026).

[2] *See* Second Nature, *Program Overview*, https://second-nature.com/programs/program-overview/ (last accessed September 29, 2026).

Blue Cross denied the appeal. Blue Cross explained its decision as follows: "[t]he services in question are a type of residential behavioral health services. The plan does not cover any behavioral modification facilities. This includes wilderness programs." *Id.* at ¶ 29.

After exhausting the pre-litigation appeal options, Chris and W.E. sued. *Id.* at ¶ 30.

Plaintiffs brought two claims. First, Plaintiffs claimed that Blue Cross and the Plan failed to provide coverage for W.E.'s treatment in violation of the express terms of the Plan. *Id.* at ¶ 34. They brought this claim under the Employee Retirement Income Security Act of 1974.

Second, Plaintiffs claimed that Blue Cross violated the Mental Health Parity And Addiction Equity Act. As Plaintiffs see things, Blue Cross used more stringent criteria to limit mental health treatment benefits than it used for analogous medical or surgical benefits. *Id.* at ¶ 57.

Defendants moved to dismiss.

## Legal Standard

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), the allegations must "state a claim that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this stage, the court must "accept the allegations in the complaint as true" and "draw all reasonable inferences in favor of the plaintiff." *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## Analysis

### I. ERISA (Count I)

Plaintiffs' first claim falls under ERISA. They claim that Blue Cross denied coverage for a benefit that is covered by the Plan.

That type of claim falls within the broad reach of ERISA. Section 502 allows an insured person "to recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *See* 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs argue that Blue Cross violated ERISA in two different ways. First, Plaintiffs contend that the Plan provided coverage for mental health services offered by a "Provider," and Second Nature is a "Provider." *See* Am. Cplt., at ¶¶ 39–40 (Dckt. No. 33). Second, Plaintiffs contend that Blue Cross committed procedural deficiencies in its review of the claim, and in its denial letters.

The first question is whether the Plan covered the program run by Second Nature. Or more precisely, the question is whether Second Nature was a Provider of Covered Services under the terms of the Plan.

A claim under section 502 requires a plaintiff to allege an entitlement to benefits under a plan. *See Smith v. Health Care Serv. Corp.*, 2021 WL 963814, at *4 (N.D. Ill. 2021) ("'The first and critical allegation' of a violation of 1132(a)(1)(B) is that the plaintiff was 'entitled to benefits under the terms of an employee-benefits plan.'") (quoting *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013)). No coverage, no claim.

The crux of the dispute is whether the Plan covers the services provided by Second Nature. The Plan provides coverage for "Covered Services," defined as "a service and supply specified in this benefit booklet for which benefits will be provided." *See* Benefits Booklet, at 15 (Dckt. No. 38).[3]

The important point is that a Covered Service must be specified in the "booklet" (in other words, the document outlining the Plan's terms). Not every medical service is covered.

The booklet describes different types of Covered Services. For example, there are intensive outpatient programs, partial hospitalization programs, inpatient services at residential treatment centers, and acute inpatient hospital services.

One of the categories is "MENTAL ILLNESS AND SUBSTANCE USE DISORDER SERVICES." *Id.* at 90. The booklet provides that "Benefits for all of the Covered Services

---

[3] In deciding this motion to dismiss, the Court reviewed and relied on the Discover Financial Services Plan Booklet, which was submitted in its entirety by the Defendants. *See* Benefits Booklet (Dckt. No. 38). Generally, in a motion to dismiss, a district court does not consider extrinsic documents. But a district court can consider "outside documents mentioned in a complaint that are central to the plaintiff's claim." *See Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 855 (N.D. Ill. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). "The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'" *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). Plaintiffs refer to "the terms of the Plan" and discuss several key definitions from the plan booklet. *See, e.g.*, Am. Cplt., at ¶¶ 14, 15, 40–42, 47, 49, etc. (Dckt. No. 33). So it's fair game at the motion-to-dismiss stage.

described in this benefit booklet are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Use Disorder." *Id.*

The booklet makes clear that inpatient benefits for mental illness include services at a Residential Treatment Center. "Inpatient benefits for these Covered Services will also be provided for the diagnosis and/or treatment of Inpatient Mental Illness or Substance Use Disorder in a Residential Treatment Center." *Id.*

The booklet includes a definition of the term "Residential Treatment Center." Importantly, that definition expressly excludes a wilderness program. "It does not include halfway houses, supervised living, group homes, *wilderness programs*, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities." *Id.* at 32 (emphasis added).

The Plan also includes a list of exclusions. Two of them loom large in this case.

As a starting point, the Plan excludes "[s]ervices or supplies that are not specifically mentioned in this benefit booklet." *Id.* at 101. That exclusion basically reaffirms that something isn't covered unless the booklet says it's covered. It reinforces what the Covered Services definition already established.

A more specific exclusion targeted certain types of behavioral health services. The exclusion confirmed that the benefit program did not cover wilderness programs.

"Expenses for the following are not covered under your benefit program . . . Behavioral health services provided at behavioral modification facilities, boot camps, emotional group academies, military schools, therapeutic boarding schools, *wilderness programs*, halfway houses, and group homes, except for Covered Services provided by appropriate Providers as defined in this benefit booklet." *Id.* at 100, 104 (emphasis added).

The Plan does not define the term "wilderness programs."

On its face, Second Nature sounds like a wilderness program. After all, the program takes place in Utah. Unless you're in a parking lot of a Shake Shack, if you're in Utah, you're probably in the wilderness. What's more, participants in the Second Nature program go backpacking around Utah. Backpacking in Utah, on its face, would seem to suggest it is a wilderness program.

Even the name sounds like a wilderness program. Second Nature sounds like an outfit that would take you out in nature. And the best part of nature is the wilderness.

But Plaintiffs assert that Second Nature was not a wilderness program under the Plan. *See* Am. Cplt., at ¶ 42 (Dckt. No. 33). Plaintiffs contend that it is an outdoor behavioral health program. *Id.* at ¶¶ 44, 48.

Plaintiffs offer their own spin about what the term "wilderness program" means. The complaint alleges that an outdoor behavioral health program has accreditation standards, but a wilderness program does not. *Id.* at ¶ 44.

In their brief, Plaintiffs also point out that Second Nature had a license from the state of Utah. "Second Nature was not a 'wilderness program.' It was licensed as a provider for outdoor behavioral healthcare, and accredited as an outdoor therapeutic youth program." *See* Pls.' Resp. to Mtn. to Dismiss, at 3–4 (Dckt. No. 41).

At the motion-to-dismiss stage, it is hard to say for certain whether Second Nature is a "wilderness program." That term is undefined, and this Court doesn't know if it is a term of art. Maybe it has a specialized meaning in the industry. Or maybe it doesn't.

What's more, this Court has limited information about what, exactly, Second Nature does. By the sound of things, it's hard to imagine that Second Nature *isn't* running a wilderness program.

Calling the program an "outdoor behavioral health program" seems too cute by half. It's hard to see a lot of daylight between a "wilderness" program and an "outdoor" program. Changing the name doesn't change the reality of what it is. People are going outside to work on their mental health.

Even if this Court assumes, for the sake of argument, that Second Nature does not run a "wilderness program," that conclusion would not mean that the program falls within the scope of coverage. Again, the booklet does not cover anything and everything. Saying that an exclusion doesn't apply doesn't mean that something is covered.

For example, imagine if you wanted to take care of your staff when they have the munchies. Imagine offering them "snacks of their choice, but not Doritos, M&M's, or salt-and-vinegar chips." That's a general rule, with three exclusions.

Maybe filet mignon does not fall within the exclusions. But that doesn't mean that a steak dinner is on the menu. After all, it has to be a "snack."

To obtain coverage, Plaintiffs must show that the Second Nature program falls within one of the categories covered by the booklet. And that's where they fall short.

The Plan defines a Covered Service as a "service and supply specified in this benefit booklet for which benefits will be provided." *See* Benefits Booklet, at 15 (Dckt. No. 38). Plaintiffs need a foothold in the booklet, but they don't have a leg to stand on.

Plaintiffs claim that the program is an "outdoor behavioral health program" and an "outdoor youth therapeutic treatment program." *See* Am. Cplt., at ¶ 48 (Dckt. No. 33). That

assertion doesn't get them very far, because the booklet doesn't say anything about an "outdoor behavioral health program" or an "outdoor youth therapeutic treatment program."

The booklet *does* cover a Residential Treatment Center. But in the complaint, Plaintiffs allege that Second Nature does not run a Residential Treatment Center. "Notably, while BCBSIL relied on a 'wilderness program' exclusion for residential treatment facilities, Second Nature was *not* a residential treatment facility." *Id.* at ¶ 42 (emphasis added).

Maybe the program falls within some other category of coverage under the booklet. But if so, Plaintiffs don't say what it is.

For example, does Second Nature run a Partial Hospitalization Treatment Program? *See* Benefits Booklet, at 28 (Dckt. No. 38). Or a Custodial Care Service? *Id.* at 16. Or an Intensive Outpatient Program? *Id.* at 22. Or something else?

In the complaint, Plaintiffs allege that Second Nature is a "Provider." *See* Am. Cplt., at ¶ 39 (Dckt. No. 33). That's not enough. The booklet provided coverage for "Covered Services." So, to state a claim, a plaintiff must allege that the *services* fall within the booklet.

In response to the motion to dismiss, Plaintiffs contend that Second Nature "meets the Plan's definition of 'Provider' and was providing 'Covered Services' (mental health treatment) to W.E." *See* Pls.' Resp. to Motion to Dismiss, at 3–4 (Dckt. No. 41).

That's not much better. The booklet does not provide blanket coverage for anything and everything that has to do with "mental health treatment." "Mental health treatment" writ large is not a Covered Service.

Again, the Plan does cover the diagnosis and/or treatment of Mental Illness and/or Substance Use Disorder. "Treatment of a Mental Illness or Substance Use Disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license." *See* Benefits Booklet, at 90 (Dckt. No. 38).

But again, the booklet doesn't cover the entire universe. The paragraph in question refers to "Covered Services" multiple times. "Benefits for all of the *Covered Services* described in this benefit booklet are available for the diagnosis and/or treatment of a Mental Illness and/or Substance Use Disorder." *Id.* (emphasis added).

And again: "Inpatient benefits for these *Covered Services* will also be provided for the diagnosis and/or treatment of Inpatient Mental Illness or Substance Use Disorder in a Residential Treatment Center." *Id.* (emphasis added).

And again: "Treatment of a Mental Illness or Substance Use Disorder is eligible when rendered by a Behavioral Health Practitioner working within the scope of their license. *Covered*

*Services* rendered in a Non-Administrator Provider facility will be paid at the Non-Participating Provider facility payment level." *Id.* (emphasis added).

Plaintiffs spill a lot of ink over whether Second Nature is accredited and licensed. That's a side show. The booklet doesn't say that coverage applies to any service provided by anyone who is accredited or licensed.

To get coverage, Plaintiffs need a hook to hang their claim on. And they haven't hooked anything yet.

Plaintiffs cannot get over the hump by simply alleging that the program does not fall within an exclusion. That's no better than saying that it's not not-covered.

To state a claim, Plaintiff must allege facts sufficient to give rise to a plausible inference that the program *is* covered. They need to allege a foothold in the booklet. *See H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1321 (S.D. Fla. 2018) (granting motion to dismiss because the plaintiff did not allege the treatment program met each of the definitional requirements of a residential treatment facility as outlined in the Plan).

In sum, the complaint fails to state a claim. At best, Plaintiffs allege in conclusory fashion that they do not fall within an exclusion. But they have not stated a claim that they fall within the scope of coverage.

The other part of the claim is a procedural violation. That claim puts the cart before the horse. The first step is to allege that the Plan covered the claim in the first place.

"The Seventh Circuit, as well as courts in other jurisdictions, hold that the appropriate remedy for violations of Section 1133 would be remand but only if a plaintiff has shown that she was prejudiced by the defendant's procedural violation." *See C.M. v. Health Care Serv. Corp.*, 2025 WL 933847, at *11 n. 17 (N.D. Ill. 2025) (citing *Siebert v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 496 F. Supp. 3d 1152, 1166 (N.D. Ill. 2020)). There isn't any prejudice if there isn't any coverage.

As things stand, Plaintiffs have not stated a claim for coverage under the Plan. But maybe there is more that they can say. The Court grants Plaintiffs leave to file a second amended complaint within three weeks of entry of this order.

## II. MHPAEA (Count II)

Plaintiffs' second claim falls under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (for those who like acronyms, the "MHPAEA").

In a nutshell, MHPAEA requires equity when it comes to coverage for mental health and substance abuse treatment (on the one hand) and medical and surgical benefits (on the other). Mental health treatment doesn't get second-class status.

The statute provides that "the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage)[.]" *See* 29 U.S.C. § 1185a(a)(3)(A)(ii).

There must be "no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits[.]" *Id.* In other words, a group health plan can't place stricter limits on mental health and substance abuse treatment as compared to comparable medical and surgical benefits.

Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as fifty outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." *See* 29 C.F.R. § 2590.712(a).

This case deals with nonquantitative limits. Examples of nonquantitative limits include limits based on geographic location, facility type, or provider specialty, to name a few. *See* 29 C.F.R. § 2590.712(c)(4)(ii)(H).

Plaintiffs argue that Blue Cross imposed nonquantitative treatment limits on mental health and substance use disorder benefits. They contend that these limits were not comparable to limitations on analogous medical/surgical benefits, in violation of MHPAEA. *See* Am. Cplt., at ¶ 66 (Dckt. No. 33).

There is no shortage of caselaw on this topic. Plaintiffs across the country have brought claims under the MHPAEA related to health insurance coverage of wilderness therapy programs. But "[MHPAEA] decisions are 'all over the map' due to the 'varying language used in the respective plans.'" *See Curtis C. v. Health Care Serv. Corp.*, 2025 WL 3678426, at *5 (N.D. Ill. 2025) (quoting *Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 828 (N.D. Ill. 2019)). Each case requires different analysis.

Here, Plaintiffs allege two violations of MHPAEA. The first violation is about a billing code. The second violation is about a comparison between mental health treatment and substance abuse treatment.

The first violation is about a revenue code by the National Uniform Billing Committee. The basic idea is that Blue Cross automatically rejects any claim for mental health services that uses the code for outdoor behavioral health.

The National Uniform Billing Committee is an organization that is "responsible for developing and issues revenue codes for services." *See* Am. Cplt., at ¶ 63 (Dckt. No. 33). The Committee has assigned a unique billing code for "outdoor behavioral healthcare." *Id.* That code is different than the code for "residential treatment centers." *Id.* at ¶ 64.

Frankly, the amended complaint leaves something to be desired. It is hard to decipher what, exactly, Plaintiffs are alleging.

Plaintiffs seems fixated on the fact that Blue Cross does not accept mental health claims that use this particular revenue code. But the complaint does not explain how the use, or non-use, of this code fits under the MHPAEA framework.

To state a claim, a complaint must allege that a provider imposes limits on mental health coverage that are more stringent than the limits on other types of coverage. It is not obvious that declining to cover treatment under a particular billing code means that a plan has imposed a treatment limitation that violates MHPAEA.

There is an added wrinkle, too. This billing code is about outdoor behavioral health. It's hard to imagine that Blue Cross uses that code for treatment for medical and surgical treatment, either.

Maybe the idea is that Blue Cross rejects this code for mental health treatment, but accepts a comparable code for medical and surgical treatment. If that's the theory, Plaintiffs don't flesh it out.

What's more, Plaintiffs have dropped the second alleged violation. In the amended complaint, Plaintiffs alleged a disparity when the coverage for mental health services is compared to coverage for substance abuse treatment. *See* Am. Cplt., at ¶¶ 67–70 (Dckt. No. 33) (alleging "Violation #2").

But in the response brief, Plaintiffs abandoned that theory. "Defendants make a valid point. Accordingly, Plaintiffs withdraw their claim that Defendants have violated MHPAEA by excluding wilderness programs for behavioral health but not for substance use disorder treatment." *See* Am. Cplt., at 16–17 (Dckt. No. 41).

So, part of the claim is hard to follow. The other part of the claim got thrown overboard. The amended complaint needs some sharpening, and this Court will give Plaintiffs that opportunity. In essence, this Court is granting its own motion for a more definite statement. *See* Fed. R. Civ. P. 12(e). Count II is dismissed in the meantime.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss is granted. The Court grants Plaintiffs leave to file an amended complaint within three weeks of entry of this order.

Date: September 30, 2026

Steven C. Seeger
United States District Judge